cases. Case number four dash 16-0277 people versus Elroy Mitchell for the appellant's attorney where and for the Apple is attorney majors. That's where you're ready to proceed. You may please support your honors. My name is Jessica. We're on behalf of the Office of the State Appellate Defender and I represent the appellant. Mr Elroy Mitchell. Your honors, today I want to argue the first issue in my briefs. But if you all have questions about the second issue, I'd be more than happy to answer those questions. Your honors, the state doesn't dispute that the trial court erred in admitting a full videotape statement at trial. The bulk of a hearsay statements in her two hour long interview with Allison Elsea detailing six years worth of abuse were inadmissible under 15-10. The only portion of AA's videotape statement that should have been admitted was a very small portion. And that concerned incidents that happened from three months before the time of the statement, which would have been February 20th, 2015, up until she turned 13, which is a seven week period. And I want to make that correction because in my briefs I stated that the operative time period was from February 20th, 2015 up until the date of the statement on May 20th, 2015. But that's actually incorrect because AA turned 13 in the interim, which makes the operative time period even narrower. So seven weeks. So as I stated, AA described six years worth of abuse in her videotape statement when only seven weeks of that was actually admissible. The state doesn't dispute this error. The state doesn't dispute that these statements were inadmissible. Well, let's talk about the time frames involved here. How did the state charge? Were there eight counts? She was convicted of 11. Separated into two time periods, right? Correct. Okay. So there are cases that can be interpreted to mean that in a situation like this, it's a continuing offense and you look to the last act to determine the appropriate time frame for the 115.10 statements. So here there was a period as charged by the state, that second time frame, if I'm remembering this correctly, was 115.10, within three months after the commission of the offense. If we view the offense as a series of acts and only look to the last act then to trigger that three-month time frame, then there would be more than what you just referred to as associated with the offense here. Would you agree? No. Well, under the statute, it says that the offense, that the incident that she speaks of, that they have to have occurred within three months of... The commission of the offense. Correct. The statement has to be made within three months of those. And so there are some offenses that she speaks about that occurs within that time frame. For instance, she talks about the defendant picking her up from the bus stop a lot this past year. Okay? So that would include the operative time period. If this happened all during this past school year, that would include the three months. Also, she talks about when the defendant would come to her house in the mornings over her aunt's house. She said that she had been going over her aunt's for the past three months. So those incidents, that would be included in that period. But the bulk of the incidents, she's talking about things that happened when she was seven, when she was eight. She talks about incidents that happened for many, many years. Those certainly would not fall under this statute. And the state doesn't dispute that. What we have to remember here is that the video was replete with many, many, many, many incidents. And it was very detailed. It was a very powerful piece of evidence. It was taken by a professional interviewer who interviews children. And they are skilled at eliciting the elements of the offense, eliciting all of the pertinent details and all of that. This video was two hours long. And it was a very powerful piece of evidence for the state. So now the only issue is whether or not this error, whether or not this was a closely balanced case such that this error would be reversible. Now that's where the state and I disagree. Under People v. Naylor, which is affirmed by People v. SEBI, the way we determine if this error is reversible is by looking at whether or not this case amounted to a credibility contest. And that's exactly what we have here. We have AA's version of the offense where she says the defendant perpetrated these offenses. And we have the defendant's version of the offense where he says that Clinton Sibley, I caught him abusing her and I didn't do it. So there are two versions of offense. Neither one are corroborated by extrinsic evidence or physical evidence. It's corroborated by physical evidence. It's corroborated by witness testimony. But that is incorrect. That is incorrect. The witnesses did not see any of these offenses. The witnesses didn't testify that any of these acts occurred. What the witnesses corroborated was the fact that she told them about it. So the witnesses corroborated her outcry. They corroborated the fact that she said something about it. They did not corroborate the actual offenses. And as I stated before, there was no physical evidence in this case. The nurse, Molly Hoffman, who examined AA stated that there was no physical evidence to corroborate her version of being abused. And if you look at People v. Holloway, which was affirmed by the Supreme Court, in that case the court said that the case was closely balanced because it was a credibility contest between the juvenile and her father. And in that case, the complainant's testimony and her allegations against the defendant, it was corroborated by physical evidence. The medical personnel who examined that complainant said that there was evidence of vaginal penetration consistent with the evidence. And so in Holloway, the court found that that was still closely balanced evidence because there were two plausible versions of the offense. And in this case, we have no physical evidence and there are two plausible versions of the offense. The defendant testified at trial. He put forth a defense. He stated that he saw Mr. Clinton's sibling on top of AA and that is what gave him the motive to frame him and get these chain of events rolling. And the jury couldn't believe that. Those were two plausible theories of the case. So AA's videotaped statement that was inadmissible that corroborated not only her allegations of the offenses occurring, but it repeatedly corroborated who the perpetrator was. She's repeatedly saying, it's my grandfather. My grandfather did this. My grandfather did that. My grandfather did this. And that was the issue in dispute. Elroy's testimony and his theory was that it was someone else. And hers was that it was her grandfather. And so the state can't downplay the impact of the admission of this video in this case. And I believe that indicative of the impact of the video in this case is the fact that the prosecutor emphasized the video repeatedly in closing argument because it was so powerful. When you compare the videotaped statement to the other 115-10 witnesses, it's night and day. Stephanie, the mother, the friend Tiara, and the other friend and cousin Austin, their 115-10 statements about what AA told them was very general. They say, yes, she told me that he touched her inappropriately. Yes, she told me that her grandfather was abusing her. Very general statements. Whereas the videotaped statement, as I stated before, was very detailed. It was very detailed. Times, dates, occurrences, who was there, what happened. It was very graphic. Putting aside AA's video statement, there was corroborated testimony. Corroborated AA's trial testimony, correct? There was corroboration of her outcry statement. Now, Antoinette corroborated some of the things that AA talked about, but she also corroborated some of the things that Mr. Mitchell talked about. For instance, Antoinette, she saw the defendant rubbing on the side of AA, and she saw the defendant on the couch with AA one time and asked him, what are you doing, and this, that, and the other. Both AA and the defendant said that that happened. She corroborated both of their testimony. Antoinette, however, did not corroborate any of AA's testimony about the offenses occurring. So, Mr. Mitchell's testimony is corroborated by Antoinette. AA's testimony is corroborated by Antoinette. And we have to remember, the state argues that AA's credibility was so much greater than the defendant's, but AA's testimony was impeached multiple times during this trial. Multiple times. Once she stated that her cousin and friend, Austin, that Austin saw the defendant with his hand like towards her buttocks area when she was getting out of the car, as if he had been touching her buttocks. And then when she walked to the bus stop, Austin asked her about that. Hey, why was your grandfather's hand in your seat like that? Well, when Austin testifies, he says that never happened. He never saw anybody's hand on her seat. He never saw that incident that she saw. AA's friend. AA testified that every morning when she was abused at her aunt's house, which was almost every day, basically, every other day or something like that, she said, every day I would go and tell my friend Tiara when I got to school. And she locks in on that. Every day I told Tiara. Well, when Tiara testifies, Tiara says that AA only told her one time about the abuse at school. One time. So, that's very inconsistent with AA's testimony. And so, AA's testimony is not airtight. It is impeached. The defendant's testimony is impeached as well. But they're both plausible versions of the offense that the jury could have believed. And that's exactly what a closely balanced case is. That's exactly what a credibility contest is. Even when you look at People v. Naylor, in that case, there were two police officers testifying for the state and one defendant. And, you know, in that case, the court said that's still a credibility contest. It doesn't have to be exactly the same amount of evidence on both sides. It doesn't have to be exactly the same amount of impeachment or whatever. It just has to be two plausible versions of the offense, two plausible versions of the story, I'm sorry, that the jury could have believed. And that's what we have in this case, Your Honors. So, I don't know if this Court has any further questions about this issue or if you have any questions about Issue 2. If not, I'd ask this Court to reverse and remand this cause for a new trial pursuant to Issue 1. All right. Thank you. Mr. Maples. May it please the Court, Counsel, the state would like to emphasize that these arguments have all been forfeited. That's why the defendant is making a plain error argument. Frequently in the defendant's brief, it talks about the judge erring in allowing the evidence or abusing his discretion in allowing the evidence. The judge was never brought before the judge. So, it's all been forfeited. So, we go to plain error. And according to a lot of defense lawyers, if you have one witness say one thing and another witness say the other thing, that's closely balanced. The state disagrees with that. Well, that's an excellent point to raise. Given SEBI and given this is a plain error situation, given that we are to make a determination, I guess SEBI's distinction, is it a closely balanced case or not? They say, well, use a common sense evaluation to try to decide that. But what do you suggest we use? What criteria should we use in deciding whether it's a closely balanced case? And applying it to the particular facts before us, you heard the argument about why this is closely balanced. What's your assessment on that? All right. The response the state has, Your Honor, is the second, the less serious charges concern rubbing any part of a minor's body for sexual gratification. Rub their head for sexual gratification. Rub their elbow for sexual gratification. There was an incident where the defendant was laying on top of AA. I think he testified to it. His wife or former wife, the grandmother of AA testified to it. Asked him why he was rubbing her side. Asked him why he was laying on her. Scolded him. There's no dispute about that in the evidence. Her cousin, I'll call him AM because he's a minor, corroborated her statements and complaints. We heard Ms. Ware pointing out that there's some inconsistencies with this, that there's some people who AA said she had spoken to about it and he said, no, that's not what happened. I didn't say it or whatever. And how should we evaluate that in deciding whether this is closely balanced? You know, I said before, I'm looking at 150 years of experience and I'm sure you've had these cases before and you've had them at least three times as much as I have. Because there's three of you, probably more like 10 or 15 times as much as I have. And personally, I have never seen a sex victim this good. And that's easy to challenge. But I'm looking at volume 9, page 30 this is the trial judge. AA's statements impressed the court as being intelligent for her age and for her age well spoken and reasonably articulate. So that's not me talking, that's the trial judge talking. Now, I've never seen a young girl this good myself. And if you look at her testimony and you look at her statement and allocutions, she's very articulate, she's very intelligent. Actually, this is an interesting point and I think that's an excellent argument to make for the jury or the trial court. Both of whom had the opportunity to see and hear her. We're looking at this from a cold record, which is why... I don't want to interrupt you, Judge, I know better than that. But not necessarily. You can look at that tape and see what her Well, that's an interesting point. So your sense is, on the question of whether this is closely balanced, we can evaluate the tapes that were admitted under 115-10. As to her intelligence and demeanor and lack of element. She was really good, very persuasive. Of course, we don't have a defendant. Do we? No, but I mean his testimony. So Ms. Moore says he denies it. He says that it didn't happen or worse than that effect. Well, he did admit to the incidents that his wife caught him. And he admitted to, in general, picking her up, taking her to the store, giving her money, etc., etc., etc. Now, he says I did it to my other grandchildren too. I don't, maybe, I Regarding his admissions as to what his wife saw, what was the nature of those activities? As I recall standing here, Judge, he was rubbing her side on one occasion. I mean, this may have been the same day or two separate days. And another time he was on the couch on her. And my opponent said he was on the couch with her. But I think, I think the testimony was he was on her. Is that what the wife said as well? Yes, she testified for the state and then she testified for the defendant. My best memory is when she testified for the state that came out. But he was on her. That's my best memory. Yes, your honor. But this whole question, so your argument is, as we evaluate, it's a plain error case. The reason you mentioned there was no objection. So we're called upon to decide whether or not, under SEBI, the evidence is closely balanced. Ms. Ware says it is, therefore, this error is such that requires reversal. And when we are evaluating whether it's closely balanced, we as an appellate court may consider our evaluation of the I think so, Judge. And I can see the arguments against that. By the way, I want to hear the rest of your answer, but just pausing there because I might forget. Is there any case law that says that? No, not that I've found. Okay, so go ahead. Well, there's a couple of points I'd like to make. You've got time. Go ahead. The defendant, and I'm looking at page 18, 19th state's brief, and it's volume 13, 149, volume 13, 162. The mother testified that AA reported to her. So why didn't you report? Why didn't you tell us about this before? And she said she was being threatened. A reasonable inference is she was being threatened by defendant. So we have defendant coming in here and saying, well, you can't let this evidence in. It was there to let this evidence in. But he's the one. He's the one that caused the delay. Now, 40 days after the time ran is the argument. 40 days after she turned 13. But he's the one that was intimidating her this whole time. So I don't think the law... Can that be an excuse for the delay of the statute? It's not in the statute. I'm sure the legislature didn't think of it. I'm not sure I understand what your argument is. Well, I think you can't profit. There are general cases, general law, that says you can't profit from your own wrongdoing. You can't procure the absence of a witness and then claim I didn't have a right to cross-examine the witness. You can't intimidate some little girl from reporting this and then come up here and say there's a technical... No, but the problem is this isn't a question of barring her testimony. She testified. The question is whether or not special evidentiary statute can apply, whether the parameters set by the legislature. Well, I think you're right. The legislature did not address that and I'm sure they didn't even think of it. So, I mean, if that's what you want me to say. The other thing I'd like to make clear is in closing argument, defense counsel used the differences between the video and AA's testimony. And I don't know what volume it is, but I'm on page 109, 1010, 107. Defense counsel said, but on the video she said I like to write things down. And then she talks about the Brad's diary in her testimony. That she said she was writing all this stuff down when she was seven. Excuse me, about what Elroy was doing. And what does she say on the stand in her testimony? I misplaced it somewhere. I don't know what I did with it. I lost it somewhere. What does she say on the video? And then he goes into a whole different thing. So, this again, defense counsel. So what we have on the video is a clear contradiction of what she's saying. She never used this phrase before. He's referring to the word vibrator. So he's drawing, he's saying she's not credible because she used the word vibrator in the video, but she didn't use it when she testified. Defense counsel again. I'm not using her words, but we know from the testimony what we're talking about here. Tried to force his penis in my mouth and he got it in a little bit. But I didn't go anymore. On the video she says he never did it. So first of all they intimidate this girl into delaying her report. Then they use the same evidence in closing argument to discredit her. And now they come up here and want a new trial. Are the videos that you just say they use to try to discredit her videos that you would have been in the first place because of the time factor? If you don't accept this continuing course of argument that he should not profit from wrongdoing, yes. So does that reduce its prejudicial effect that videos otherwise improperly admitted were used to point out inconsistencies in her testimony in the future? Yes, I think so. I mean I don't see how they can use, how they can come up here and complain of evidence and then use it to discredit her in closing argument and want a new trial. Are there other examples besides what you just said? I found three, I don't know. Where they essentially point out inconsistencies and use these inconsistencies in the future testimony? Yes, that happened. Of the, to be more clear, of the video recordings that were beyond the time frame? Well there are two, there are at least two serious offenses that are not affected by that. Now my opponent is going to get up and say that all that other evidence had an effect on those. But there are two serious offenses that occurred prior to, what is it, three months, prior to three months of the video. Out of, I don't know, I think it was eight or nine convictions. So her contention is that the statute doesn't commit a recording to be admitted of her statements regarding the defendant's sexual offenses committed against her if they were committed more than three months earlier, once she's turned 13? Yeah, yeah, I think that's their record. And what's your position on that? Do you agree that that's correct reading of the statute? I think it's a fluid statute. I don't think, I don't think, like you said, I have no case law to support me other than general law about profiting from your own wrongdoing or this course of conduct argument. I don't think it's been fleshed out as to whether or not this actually applies when a defendant is intimidating the child. And I don't know of any case where they used it in closing argument. Are you asking us to self-construe the statute? Yeah, I would love to have this court construe the statute. I mean, for no other reason than to clarify the error on it. Otherwise, it would be repeated. Any questions? I don't see any. Thank you. Ms. Ware, rebuttal argument? Just a couple of things, Your Honor. People vs. Holloway says the statute should be construed narrowly. This is a hearsay exception. This is an exception to the rule. It's not a free-for-all. There are limited statements that can come in under the statute. The state in its brief did not dispute that the statements that happened prior to regarding offenses that happened prior to 2015, February 20th were inadmissible, Your Honors. And those statements were many. The state also mentioned that this court should look at the tape and see how powerful it is, see how intelligent AA testified on there. But that's just an implied concession that this videotape was prejudicial, that it reaffirmed to the jury the impact of this statement was that this little girl was giving information to a professional interviewer in a very friendly, safe environment where it was just her and the interviewer. And she does testify, I'm sorry, she does give statements to the interviewer that are very impactful. And that is exactly our argument, that the prejudice of this video cannot be downplayed. Also, I wanted to mention that the, sorry, it's not as if this video contained one inadmissible comment. This video contained many, many, many, many inadmissible comments. And so, as I mentioned earlier, that the prior consistent statements, the case law has been clear about this for years, that the danger with prior consistent statements is repeated. But the prior consistent statements don't apply to 115-10. Excuse me? The rule against prior consistent statements does not apply to statements admitted under 115-10. But the statements admitted under 115-10 are corroborating, I'm sorry, the corroborating effect of her statements under 115-10. Not only is she corroborating that the incidents occurred and what happened, she's also corroborating the issue and dispute, which is who the offender is. Let me ask you the same question I asked Mr. Majors, and that is, how do we evaluate whether the evidence is closely balanced, as the subject court says? You heard him suggest that we as an appellate court can look at the videotape ourselves and assess how strong her testimony is. Of course, we don't have any video of your client. Is he right? Is that something we can do? What's your position on that? My position is that this court should follow the case law, that this court should follow what happened in Holloway, People v. EZ, that this court should determine, do we have two plausible versions of the offense? Do we have this witness saying this thing and the defendant saying something that is different? But that's not my question. My question was, can we look at the videotape and make a call as to how credible she is? I don't see why this court shouldn't look at the videotape, because that was part of the evidence. But what I'm trying to say is that it does not have to be an equal amount of evidence on both sides for it to be a credibility contest. One other question on this. You heard Mr. Majors argue that the defense used some of the videotape, which you are saying was improperly admitted, used during closing argument to impeach AA's testimony. To what extent, first, is that true? And secondly, to what extent should that serve to inform us on the prejudice of that improper admission that it was used to, at least in part, impeach her? Right. So, first of all, the impeachment value of whatever defense counsel impeached her on, and I believe that is correct, and defense counsel did use the video to impeach her, the value of that paled in comparison to the value that the state had by presenting the video. These were a few things that defense counsel found out. Now, had defense counsel not impeached her, I'd be arguing that defense counsel was ineffective. I'm arguing that defense counsel is ineffective for not moving to, for allowing this error to occur. I've argued that in my brief, that defense counsel did not tell the court that this evidence, this video, should have been redacted. It should not have come in. So, yes, even though, I see my light, even though defense counsel did use it for impeachment, that the value of that paled in comparison to the value that the state got from presenting the video. But it is correct, it was used at least partially for impeachment. Yes, that is correct. So, if this court has no further questions, I'd ask this court to reverse the event for a new trial. Thank you. Thank you, counsel. The case will be taken under advisement and a new trial is scheduled for next week.